UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| | ) No. S1-4:21-CR-0365 RLW |
| v. | ) ) |
| WAYNE D. LOZIER, Jr. | ) ) |
| Defendant. | ) |

**THE UNITED STATES' SENTENCING MEMORANDUM**

COMES NOW the United States of America, by and through its Attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Matthew A. Martin, Assistant United States Attorney for said District, and recommends that this Court sentence Defendant Wayne Lozier, Jr. to a term of imprisonment within the 151-to-188-month range advised by the United States Sentencing Guidelines. The United States offers the following information in support of its recommendation.

**Introduction**

On September 28, 2023, a jury found Defendant guilty of both counts charged in a Superseding Indictment: (I) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(a)(1); and (II) kidnapping, in violation of 18 U.S.C. § 1201(a). *See* Final Presentence Investigation Report, Doc. #227 (the "PSR"), ¶ 1. In calculating the sentencing range of 151 to 188 months advised by the U.S.S.G., the United States Probation Office determined that Counts One and Two group together for a total offense level of 34 and that Defendant's criminal history category is I.[1] *Id.*, ¶¶ 24, 31, 59. For the reasons stated below, the Government believes that a

---

[1] At the time of this filing, Defendant has not filed any objections to the PSR.

sentence within that range is "sufficient, but not greater than necessary" to satisfy the factors listed in 18 U.S.C. § 3553(a).

### Application of the 18 U.S.C. § 3553(a) Factors

The Government's recommendation primarily stems from the nature of Defendant's conduct in committing the instant offenses. It is also meant to promote respect for the law and to deter Defendant, and others working in the bail bond and surety recovery industry, from committing similar acts in the future. Finally, sentencing Defendant within the range advised by the Guidelines would not result in an unwarranted disparity from co-Defendant Jody Sullivan's probation sentence because Defendant's offense conduct was much more egregious.

A. Defendant Illegally Apprehended and Abused R.H.

On May 9, 2019, Defendant acted beyond the scope of his authority as a bail bondsman licensed by the Louisiana Department of Insurance when he apprehended R.H. from a residence in St. Peters, Missouri.[2] The Defendant's unlawful plan, however, started before that day. As R.H. testified at trial, she received a phone call days earlier from a man who represented that he was a deputy with the St. Tammany Parish Sheriff's Office. The man told her that the outstanding warrants for her two pending misdemeanor charges would be recalled and offered her the opportunity schedule a new date to appear in court. But according to the man, she was required to provide her address so that the necessary court documents could be sent to her by mail. Even though R.H. had not told her family members where she was living at the time, she gave the man her address. She trusted that she was speaking to someone in law enforcement. Call records show that the call was made from a cellphone that Defendant utilized at the time.

After deceiving R.H., Defendant failed to comply with the Missouri Department of

---

[2] Defendant's conduct is based on the evidence the Government presented at trial.

2

Commerce and Insurance's regulations before apprehending her.  He did not obtain a license issued by the Missouri DCI.  Nor did he contact local law enforcement before barging into the St. Peters residence and hauling R.H. away barefoot wearing only her pajamas.  It was Defendant's responsibility to know what was required to lawfully apprehend R.H. outside of his home state.  His claim that he was unaware of these requirements, assuming it is true, does not mitigate his conduct.  Because after Defendant apprehended R.H., Officer Jeffrey Atkins with the St. Peters Police Department clearly advised him—going as far to cite the applicable Missouri statutes—that Defendant acted illegally.  It was at that point that Defendant had the opportunity to right his wrongs.  Instead, Defendant chose not to return R.H. but instead continued to transport her across state lines against her will.

Even worse, Defendant physically and verbally abused R.H. throughout the day.  After R.H. spoke to the Officer Atkins, she became concerned about her safety.  She was uncertain that Defendant had the authority to take her back to Louisiana.  Her questions grew as she began to suspect that Defendant was the person who called her impersonating a deputy with the St. Tammany Sheriff's Department.  So she decided to seek help from clerks at a convenience store.  This was not her attempt to escape, rather it was a cry to get a response from law enforcement.  In response, Defendant tased her multiple times.  He pulled her hair.  He drug her out of the store and across concrete by the chain he used to connect the handcuffs he placed on her wrists and the shackles he fastened to her legs.  Once he had R.H. back in the car, Defendant repeatedly threatened her.  He told her that he would tase her again.  He told her that her next stop would be the hospital.  He told her that he would make sure her abusive husband knew where he was taking her.  He told her that he would arrange for her to be charged with a felony offense.  He told her that she would never see her children again.  He belittled her.  He told her that she was his property.

He told her that she had no rights.

As the day continued, Defendant started to worry that he would be arrested if he returned R.H. to the St. Tammany's Sheriff's Department. To avoid that risk, Defendant took R.H. to a detention facility in Jackson, Mississippi. Knowing that he had acted unlawfully, Defendant attempted to cover it up. As a result, R.H. spent nearly a week confined in a jurisdiction where she had no charges pending. Taken together, Defendant's conduct warrants a sentence within the range advised by the Guidelines.

### B.  A Guideline Sentence Would Further the Purposes of Federal Sentencing

A sentence within the range advised by the Guidelines would further several sentencing purposes listed in 18 U.S.C. § 3553(a)(2). First, such a sentence would promote respect for the law. As shown by the evidence at trial, Defendant disregarded the laws regulating his profession in committing the instant offenses. Even giving Defendant the benefit of the doubt that he was unfamiliar with the Missouri statutes on fugitive apprehension, he willfully continued to violate them once Officer Atkins brought them to his attention.

Defendant's above-the-law mindset only continued after he was indicted. While on pretrial release, Magistrate Judge John M. Bodenhausen ordered that Defendant be subject to certain special conditions, including: (1) that Defendant be prohibited from possessing a firearm, destructive device, or other weapon; and (2) that Defendant be prohibited from engaging in fugitive transportation. Doc. #27. A few months later, Defendant chose to ignore both by continuing to apprehend fugitives in Louisiana, going as far as violating his travel restriction to the Eastern District of Louisiana to do so on one occasion. PSR ¶ 3. Defendant was also captured by a Louisiana hospital's security camera dressed in his usual recovery agent "uniform" with a firearm holstered on his belt. Doc. #60. After a hearing, Judge Bodenhausen found "by clear and

convincing evidence that Defendant willingly violated several, non-technical, conditions of release" and revoked Defendant's bond. *Id.*

Second, a sentence within the Guidelines range would afford adequate deterrence to similar criminal conduct. Looking specifically to Defendant, the need to deter him from flouting the law and using his license as a bondsman or recovery agent to justify terrorizing individuals is high. In a more general sense, such a sentence would deter others who work in the industry from apprehending individuals without first ensuring they were complying with the relevant laws and regulations. The act of apprehending individuals who violate their bond conditions may at times be a dangerous job, but that cannot serve as a license to go rogue. Like any occupation that presents risks, the laws and regulations in place are meant to further the safety of everyone involved. That cannot be achieved when someone, like Defendant here, disregards them.

C. Defendant's Conduct and Characteristics Separates Him from Co-Defendant Sullivan

The Government anticipates that Defendant will point to 18 U.S.C. § 3553(a)(6) and recommend that this Court vary downward from the range advised by the Sentencing Guidelines to avoid an unwarranted disparity between his sentence and that of his co-Defendant Jody Sullivan. On December 20, 2023, this Court sentenced Sullivan to a five-year term of probation. The key differences between Defendant and Sullivan support Defendant receiving a Guideline sentence.

To start, unlike Defendant, Sullivan took responsibility for the role she played in committing the instant offenses by pleading guilty. Had it not been for Defendant, Sullivan would have never been involved with apprehending R.H. Defendant approached Sullivan and asked that she accompany him on the trip to Missouri. At the time, Sullivan was still recovering from having a tumor surgically removed from her brain. While she worked to relearn all of her basic life skills, she relied on Defendant to help with her home and expenses. As a result, she felt obligated to

accompany Defendant even though she was unaware of all the circumstances. Defendant and Sullivan had distinct motivations for travelling to St. Peters—Sullivan wanted to help Defendant because Defendant had helped her; Defendant simply wanted to bring R.H. back to Louisiana to collect his reward.

In terms of roles in the offenses, the evidence at trial showed that Defendant took charge over apprehending and transporting R.H. Moreover, it was Defendant, not Sullivan, who spoke to Officer Atkins and agreed to take R.H. to the Blytheville, Arkansas Police Department. *See* PSR ¶ 9. And it was Defendant who ultimately chose to shirk that plan and take R.H. to a detention facility in Jackson, Mississippi instead. Defendant's leadership role in committing the instant offenses further distinguishes him from Sullivan.

Lastly, Sullivan's involvement in the instant offenses is in sharp contrast to her overall history that is otherwise free of any criminal conduct. The same cannot be said for Defendant. Indeed, he is currently charged in the 14th Judicial District Court of Louisiana with felony aggravated battery with a dangerous weapon. *Id.*, ¶ 34. In that incident, it is alleged that Defendant, acting as a recovery agent, apprehended a woman from her home, tased her, and conveyed her to the local jail, only to learn that she had already resolved the charges pending against her. This offense, alleged to have occurred seven months after the instant offenses, is yet another factor that warrants distinguishing Defendant from Sullivan.

## Conclusion

WHEREFORE, for the foregoing reasons, the United States of America respectfully requests that this Court sentence Defendant to a term of imprisonment within the 151 to 188 months that are advised by the United States Sentencing Guidelines.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Matthew A. Martin*
MATTHEW A. MARTIN, #64000MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2024, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Matthew A. Martin*
Matthew A. Martin, #64000MO
Assistant United States Attorney